IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANDRE D. KNIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:08CV741 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Andre D. Knight seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner's denial decision became final on September 26, 2008, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

<u>The Claimant</u>

Plaintiff was born on April 28, 1969, and was 27 years of age on his alleged onset date of disability. He has an eleventh grade education. Plaintiff has past relevant work experience as a furniture mover/driver. Plaintiff alleges disability as of August 1, 1997, due

to muscle spasms, shortness of breath, inability to lift more than 25 pounds, inability to be on his feet for more than twenty minutes, and inability to do exercises or sit for a long period of time.

## The Administrative Proceedings

Plaintiff filed applications for Disability Insurance Benefits and SSI on May 20, 2004, alleging disability as of August 1, 1997, due to muscle spasms, shortness of breath, inability to lift more than 25 pounds, inability to be on his feet for more than twenty minutes, and inability to do exercises or sit for a long period of time. His claim was denied initially and on reconsideration, and Plaintiff filed a request for a hearing. A hearing was held on October 11, 2006, and a decision denying benefits was issued on December 27, 2006. Plaintiff filed a request for review, and on September 26, 2008, the Appeals Council found no basis for review of the ALJ's decision. Plaintiff then filed this request for judicial review.

The findings of the ALJ relevant to this review include the following:

1. Plaintiff met the disability insured status requirements of the Social Security Act through March 31, 2001.

2. Plaintiff has not engaged in substantial gainful activity since August 1, 1997, his alleged onset date of disability.

3-4. Plaintiff's pneumothorax (spontaneous lung collapse), asthma, muscle spasms, allergies, back pain, bronchitis, history of cocaine and marijuana abuse, tobacco abuse and depression are severe impairments, but do not meet or

medically equal one of the listed impairments in Appendix 1 to Subpart P of Social Security Regulation No. 4.

5. Plaintiff has the residual functional capacity to perform light work involving unskilled, routine, simple, repetitive tasks with a sit/stand option and avoiding fumes, odors, dusts, gases, poor ventilation, etc., or any climbing of ladders, ropes or scaffolds.

6. Plaintiff is unable to perform his past relevant work.

7-9. Plaintiff was born on April 28, 1969 and was 27 years old, defined as a younger individual, on the alleged disability onset date. He has a limited education and can communicate in English. Transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled.

10-11. Considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Therefore, Plaintiff has not been under a disability as defined by the Social Security Act from August 1, 1997, through the date of the decision.

## The Scope of Review

The scope of judicial review by this Court of the Commissioner's decision denying benefits is limited. *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal

standards and whether the Commissioner's findings are supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case *de novo*. *Id.* Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

## Discussion

In making a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. §§ 404.1520, 416.920 (2009). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. The burden of persuasion is on the claimant through the fourth step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education and work experience. *Id.*

In this case, the ALJ found that Plaintiff met the disability insured status requirements of the Social Security Act on August 1, 1997, his alleged onset date of disability, and continued to meet them through March 31, 2001. At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability. Proceeding to steps two and three, the ALJ found that Plaintiff suffers from pneumothorax (spontaneous lung collapse), asthma, muscle spasms, allergies, back pain, bronchitis, history of cocaine and marijuana abuse, tobacco abuse and depression, severe impairments, but does not have an impairment or combination of impairments that meets or equals the ones listed in Appendix 1, Subpart P, Regulations Number 4.

The ALJ concluded his evaluation at steps four and five, finding that Plaintiff has the residual functional capacity for light work involving unskilled, routine, simple, repetitive tasks with a sit/stand option, but no fumes, odors, dusts, gases, poor ventilation, etc., or any climbing of ladders, ropes or scaffolds. However, the ALJ found that Plaintiff is not able to return to his past relevant work as a furniture mover/driver. At step five, the ALJ found that considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

In this action for judicial review, Plaintiff argues that the ALJ committed reversible error by failing to accord sufficient weight to the opinions of Plaintiff's "treating" physicians,

Dr. Erica Friedman, Dr. Byron Randolph, and Dr. Faye Banks.[1] (Docket No. 11, Pl.'s Mem. in Supp. of Mot. for Summ. J., at 3-5.) Plaintiff contends that the ALJ committed reversible error by "totally ignor[ing]" Dr. Friedman's opinion. (*Id.* at 4.) He further argues that although the ALJ referenced Dr. Randolph's opinion, he improperly disregarded it without any stated reason. (*Id.* at 4.)

The Commissioner has promulgated regulations governing the weight to be given the opinions of treating physicians. The regulations provide, in pertinent part, as follows:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . If we find that a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . we will give it controlling weight.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2009). By negative implication, if a treating source's opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques *or* if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

---

[1] As correctly noted by the Commissioner, although Plaintiff cites to an opinion by a Dr. Banks in his brief, no such opinion exists in the record. The page cited by Plaintiff is a section of the hearing transcript where Plaintiff's attorney mentions a Dr. Banks. Indeed, Dr. Banks appears only briefly in the record evidence; she saw Plaintiff twice in 2002 complaining of chest and back pain. (Tr. at 167-69.) Plaintiff abandoned this part of his argument in his supplemental memorandum to the court (*see* Docket No. 14); thus the court will not address it further.

Plaintiff is correct in stating that the ALJ did not include in his analysis discussion of the opinion contained in a form "Report of Medical Examination" requested by the Durham County Department of Social Services. (*See* Tr. at 226.) The one page form contains an illegible signature, and at the times of the hearing and the ALJ's decision, the doctor who completed it was unknown. (*See id.* at 244)(Plaintiff's counsel stating "I have no clue who signed it but some physician.") The form states that Plaintiff's diagnosed asthma leaves him with a work capacity of "None," and that Plaintiff is unable to walk 200 feet on a flat surface and a much shorter distance if uphill or up stairs. (*Id.* at 226.)

Plaintiff's counsel now avers that he was told that the form was completed by Dr. Friedman, a physician at Lincoln Community Health Center. Although there is no evidence in the record that Dr. Friedman ever treated or met Plaintiff, Plaintiff contends that as a physician practicing at Lincoln, she is, as are all Lincoln physicians, Plaintiff's treating physician. (Docket No. 14, Supp. Mem. in Supp. of Mot. for Summ. J., at 2.)

The Court's role is to ensure that the ALJ considered all relevant evidence and reached a decision that was rational and sufficiently explained. To assist the Court in reviewing whether the ALJ's findings are supported by substantial evidence, the ALJ must "explicitly indicate[] the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984).

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's

> "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

*Id.* at 236 (quoting *Arnold v. Sec'y of Health, Ed. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)).

However, the ALJ is not required to discuss every finding in every medical report. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993)("[T]he ALJ need not evaluate in writing every piece of testimony and evidence submitted. What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning.'")(citations omitted); *Wyatt v. Bowen*, No. 89-2943, 1989 WL 117940, at *4 (4th Cir. Sept. 11, 1989)("[T]he duty of explanation will be satisfied when the ALJ presents 'us with findings and determinations sufficiently articulated to permit meaningful judicial review'.")(unpublished opinion)(citations omitted).

In this case, the Court agrees with the Commissioner that the ALJ did not commit error in choosing not to evaluate in writing the opinion at issue. The form was anonymous to the ALJ; by definition, then, Plaintiff failed to establish by any record evidence a treatment relationship with the person who completed the form. *See* 20 C.F.R. §§ 404.1502, 416.902. Moreover, regardless of who completed the form, there is no evidence that the opinion is based on an actual examination or any medically acceptable clinical and laboratory diagnostic techniques. *See Craig*, 76 F.3d at 590. Finally, to the extent that the opinion purports to state

that Plaintiff has no capacity for work, it is entitled to little weight. Under the regulations, those opinions that a plaintiff is unable to do work of any kind are entitled to little weight, since they offer conclusory statements on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e); Social Security Ruling 96-5p, *Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner* ("SSR 96-5p"). Indeed, while treating physicians are an important source of medical opinions, their opinions as to whether an individual is "disabled" or "unable to work" "can never be entitled to controlling weight or given special significance." SSR 96-5p.

Similarly, substantial evidence supports the ALJ's finding that Dr. Randolph's opinion is not entitled to controlling weight or special significance. (*See* Tr. at 20.) Dr. Randolph, who did in fact, treat Plaintiff over a period of years, opined that Plaintiff was "currently not able to work" due to polysubstance abuse (alcohol, marijuana and tobacco), depression and anxiety, multiple pneumothorax and asthma. (*Id.* at 173.) The ALJ found that Dr. Randolph's opinion that Plaintiff is unable to work is not entitled to controlling weight. As discussed above, substantial evidence supports this finding. (Tr. at 20.)

Moreover, Dr. Randolph's opinion is neither supported by objective medical evidence nor is it consistent with the other evidence in the record. Plaintiff has a remote history of pneumothorax, in the early 1990s. (*See id.* at 111.) However, there is no evidence on any events since then, and Plaintiff's physical examinations and x-rays for pneumothorax have been mostly unremarkable for a decade. Plaintiff presented to the emergency room in 1996

complaining of rib and scapular pain; however, his room air pulse oximetry was 97%, and his chest exam and breathing were normal. (*Id.* at 133.) A chest x-ray showed "no pneumothorax is evident." (*Id.* at 148.) Chest x-rays in 1997 similarly showed no significant interval change from 1996, no evidence of pneumothorax, and negative for acute disease. (*Id.* at 147.) In May 1998, Plaintiff again presented to the emergency room with transient breathing problems. (*See id.* at 123.) Plaintiff's room air pulse oximetry, however, was 98% and his chest x-ray was negative. (*Id.* at 124.) Plaintiff's exam and history "did not suggest any other significant illness or abnormality." (*Id.*)

In September 2003, Plaintiff was seen by Dr. Randolph. Dr. Randolph noted that Plaintiff's "back and his breathing still causes him poor exertional effort," but the objective examination reveals that Plaintiff's chest was clear to auscultation and percussion. (*Id.* at 161.) An x-ray taken the same day shows that the soft tissues and bony thorax are unremarkable, with no evidence of acute cardiopulmonary disease. (*Id.* at 170.)

The objective medical evidence also does not support Dr. Randolph's opinion regarding the severity of Plaintiff's back impairment. In March 2000, Plaintiff went to the emergency room complaining of back pain after having lifted a large piece of carpet. (*Id.* at 119.) Plaintiff was diagnosed with thoracic strain and was given one 800 mg pill of ibuprofen and sent home. (*Id.*) In 2002, following complaints of back pain, a lumbar spine x-ray showed that Plaintiff's spine was completely normal. (*Id.* at 172.)

As for Plaintiff's polysubstance abuse, anxiety and depression, Plaintiff underwent a psychiatric evaluation at Lincoln Community Health Center on March 30, 2004. (*Id.* at 149-53.) Plaintiff denied any concentration problems, any symptoms compatible with panic attacks, PTSD or OCD, or any history of psychosis or mania. (*Id.* at 150.) He also denied any previous mental health treatment or any history of suicidal or homicidal thoughts or violent outburst. (*Id.*) Ms. Patricia C. Ramsey, DSW, LCSW, who conducted the examination, concluded that Plaintiff had moderate symptoms of depression, "although it is difficult to say that this meets the criteria for Major Depression." (*Id.* at 152.) She recorded a GAF of 60. (*Id.*)

A mental residual functional capacity assessment was completed by Dr. Steven E. Salmony in August 2004. (*See id.* at 200-02.) Contrary to Dr. Randolph's stated opinion that Plaintiff's mental impairments leave him unable to work, Dr. Salmony opined that Plaintiff was only moderately limited in his ability to understand, remember and carry out instructions, to perform activities within a schedule and maintain regular attendance, to complete a normal workweek, to interact appropriately with the public and respond appropriately to changes in the work setting. (*Id.*) Plaintiff is not significantly limited in any other mental category, and in Dr. Salmony's opinion, he is capable of simple, routine, repetitive tasks. (*Id.* at 202.)

The Court accordingly finds that substantial evidence supports the ALJ's exclusion of a written discussion concerning an anonymous medical opinion unsupported by any

objective medical findings.  Similarly, substantial evidence supports the ALJ's finding that Dr. Randolph's opinion is entitled to little weight.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for summary judgment (Docket No. 10) be denied, that the Commissioner's motion for judgment on the pleadings (Docket No. 12) be granted, and that judgment be entered in favor of the Commissioner.

                                                               /s/ P. Trevor Sharp
                                                  United States Magistrate Judge

Date:  July 13, 2010